TERM OF 1901-1902. 19

Elms vs. Wright-Blodgett Co., Ltd., et als.

## No. 13,723.

CHARLES S. ELMS VS. WRIGHT-BLODGETT COMPANY, LIMITED, ET AL.

106    19
109    241

### SYLLABUS.

1. A suit brought by a defendant in injunction after dissolution of the injunction by the District Court and the delays for a suspensive appeal have expired, to recover damages on the bond for wrongful injunction, should not be dismissed on an exception of prematurity, because the year for a devolutive appeal had not yet expired, defendant filing the exception not having appealed from the judgment dissolving the injunction. This judgment may not be technically *res judicata,* but it can be legally used as the basis for a suit for damages subject to such rights as may arise from a reversal of the judgment on a devolutive appeal. The utmost right defendant would have would be to have judgment in the case delayed.

2. Where a person alleging that another who made a sale to him of real estate illegally refused to execute a deed of sale, institutes a suit in which he claims ownership of the property and prays that defendant be ordered to execute a deed of sale and he incidentally causes an injunction to issue enjoining defendant from disposing of the property, he cannot, when the injunction has been dissolved as not having been justified by the facts, shelter himself from damages for a wrongful injunction, on the ground that his action, claiming the property, would, under Article 2453 of the Civil Code, have had the same effect as an injunction.

3. Defendant in injunction, suing upon the injunction bond for damages for wrongful injunction, can only recover damages resulting from the injunction; he cannot, in such a suit, recover for remote conjectural profits, of which he claims to have been deprived, the collateral and consequential results of the injunction.

4. Whether defendant in an injunction suit in which the injunction has been dissolved should recover from the plaintiff in injunction in an action on the bond his attorney's fees as damages, and, if so, how much, is to be determined by the facts of each special cause and not decided by any inflexible rule.

A PPEAL from the Fifteenth Judicial District, Parish of Calcasieu —*Miller, J.*

*Paul A. Sompayrac,* for Plaintiff, Appellant.

*Pujo & Moss,* for Defendants, Appellees.

The opinion of the court was delivered by NICHOLLS, C. J.

On application for rehearing by BLANCHARD, J.

## STATEMENT OF THE CASE.

NICHOLLS, C. J.   The plaintiff asks judgment against the defendant company, and William J. Martin, *in solido,* for the sum of twenty-five hundred dollars, and against the defendants separately for the further sum of six thousand seven hundred dollars, with interest.   His demand is based upon allegations that on the 23rd of December, 1899, the defendant company, acting through Michael Kelly, its representative and co-partner, wrongfully, maliciously and libelously, had issued from the District Court for Calcasieu, a writ of injunction, enjoining and commanding petitioner not to proceed further to sell certain lands described, situated in the parishes of Calcasieu, Vernon and Rapides, of the full value of thirteen thousand dollars; that said company, as principal, and W. J. Martin, as surety, executed on that day an injunction bond, binding themselves firmly unto Charles S. Elms, in the full sum of two thousand and five hundred dollars; that said writ was wrongfully, maliciously and libelously sued out by defendant company, and for the purpose of injuring petitioner in his business and reputation; also to suppress competition they met with from him in the purchase of real estate.   That said company, limited, well knew when they issued said injunction that petitioner was a young man engaged in the purchase and sale of real estate, and they desired and. did suppress said competition by the issuance of said injunction.

That at the time said injunction was issued, petitioner had sold the lands described to J. P. Underwood of Chicago, Illinois, for $4.00 per acre, less 3% brokerage, and that the acreage of same was approximately 3280; that petitioner was simply carrying out his contract with said Underwood, all of which was well known to Wright-Blodgett Company, Limited, when they had said wrongful and malicious injunction issued.

That defendant company well knew that plaintiff had not sold said lands to them and all their claims and pretensions to the contrary were made to mask their greed and malice; that the said libelous injunction was dissolved by judgment of the court, on February 14th, 1900, and the same also rejected the demands of defendant company, limited, *in toto;* that the business of petitioner was damaged and arrested, his capital placed out of current business and he deprived of opportunities to purchase and sell real estate at a profit by said injunction; that while the capital of Elms was tied up by the said writ the defendant com-

pany took advantage of him by purchasing certain lands upon which he had options, and of which options he could not avail himself, owing to his capital being tied up, as aforesaid; that the damage to his business and loss of profits caused by said wrongful, malicious and libelous writ of injunction aggregates the full sum of three thousand dollars; that it was necessary for him (Elms) to employ an attorney to defend and dissolve said writ of injunction, and the fees paid and due said attorney is the sum of one thousand dollars.

That his business reputation had been damaged by said injunction to the extent of three thousand dollars; that he was forced to make expendi.ures in defending said injunction aggregating the sum of two hundred dollars; that said company should be made to pay Elms the full sum of two thousand dollars for exemplary and punitory damages for having issued, without probable cause, said wrongful, malicious and libelous writ of injunction.

The defendant company filed an exception of want of citation, and under reservation of same, excepted that plaintiff's demand was premature, vague and indefinite.

Defendant company, under reservation of its exceptions, answered. After pleading the general issue, it admitted that it had filed the suit complained of; that it had signed the injunction bond therein; that upon trial thereof its demands were rejected and the injunction had been dissolved, but it specially denied that said suit was instituted and prosecuted for any other purpose than to have the agreement therein de-clared upon between Elms and itself recognized, enforced, and made executory by proper decree; that said suit had for its basis a legal agreement, and plaintiff therein had probable cause for its institution; that plaintiff was not entitled to recover any damage against it, by reason of the institution of said suit, not even the attorney's fees, for the reason that said injunction was tried with the merits and all the services rendered by the attorney in said case were in defense of the main suit, for which judgment could not be recovered in the present proceeding, and for the further reason that the dissolution of the injunction did not have any effect whatever upon the right of plaintiff to sell or dispose of the property described in said suit, as the mere filing of said suit, claiming the title to be vested in plaintiff in said suit, operated in law an injunction; that all of the items claimed by plaintiff as damages were fictitious.

It specially denied that it then, or at any time previous, entertained

22          SUPREME COURT OF LOUISIANA,

Elms vs. Wright-Blodgett Co., Ltd., et als.

any malice against petitioner, or that the suit complained of was instituted with malice, or with any desire to injure his business in any way, and it averred that petitioner had long since sold the land which was the basis of the original controversy.

W. J. Martin adopted the answer of his co-defendant.

The District Court rendered judgment in favor of the plaintiff against defendants *in solido* for the sum of six hundred dollars for damages caused him by the issuing of the injunction complained of, with legal interest from date.

Plaintiff appealed.

Defendant answered the appeal. It alleged error in the judgment; prayed that it be entirely reversed, but if affirmed at all, the amount be reduced to fifty dollars.

## OPINION.

This case is a sequence of that of Wright, Blodgett & Co., Limited, vs. Charles S. Elms, decided this day. The plaintiff herein sues the plaintiff in the former case and the surety upon the injunction bond, which he furnished in that case, for damages alleged to have resulted from the injunction. Defendants excepted to the suit on the ground of prematurity, alleging that the judgment of the District Court dissolving their inunction had not yet bejen settled finally by a decision of the Supreme Court, it being an appealable case. This judgment was rendered on the 14th day of February, 1900.

Defendants took a devolutive appeal from the same on the 19th day of December, 1900, and the judgment was affirmed this day by the Supreme Court. In support of the position taken by them, they refer the court to 2nd Greenleaf on Evidence, Sec. 452; Blass vs. Gregory & Wilson, 15 Ann. 421; Murphy vs. Redler, 16 Ann. 13; Lawler vs. Levy, 33 Ann. 220; and Wentz vs. Bernhard, 37 Ann. 636 *et seq.* They deny the applicability of Lemennier vs. McClearly, 41 Ann. 411, cited by plaintiffs to the facts of the present case, and call attention by reference to McClearly vs. Lemennier, 40 Ann. 253, that the judgment of the District Court dissolving the injunction had been affirmed by the Supreme Court before Lemennier instituted his action.

Referring to the Wentz case, defendants, in their brief, say:

"Justice Manning, on application for a rehearing, found that the arrest, which had been set aside by a judgment of the District Court, had been appealed to the Circuit Court, and the judgment affirmed.

The exception of prematurity was, therefore, overruled, and the case considered on the merits, but the court will observe that the finality of the judgment was the sole reason given for an examination into the merits."

The cases in 15th, 16th and 33rd Annuals were all cases of damages for "malicious arrest or prosecution." In the first two of these cases (Blass vs. Gregory & Wilson, and Murphy vs. Redler), the Supreme Court simply declared that to sustain an action for a malicious prosecution, plaintiff must show that the prosecution was at an end. No question was before it as to what the situation would have been had the prosecution been terminated by judgment in the lower court, but that the action for damages had been instituted before the period for an appeal had expired. In the Lawler case, the suit was dismissed upon a question of pleading under an exception of "no cause of action." The plaintiff had failed to aver the termination of the malicious prosecution. So far as the pleadings went, the prosecution, alleged to have been malicious, might still be pending and under investigation by the District Court. In Wentz vs. Bernhard, 37 Ann. 636, which was a suit for damages for false arrest and imprisonment, the defendants excepted that plaintiff's petition contained no averment that the suit in which the writ of arrest issued had been finally determined. The exception was referred to the merits and disposed of with the judgment on the merits.

The Supreme Court, in deciding the case on appeal from the judgment, stated that it might, perhaps, be considered as one on the merits, but that it would treat it as *one sustaining the exceptions,* and the judgment rendered by the lower court against the plaintiff was affirmed from that standpoint. In the original opinion the court was under the impression that the original prosecution was still pending in the court in which it originated, for it so declares, adding, "that when decided it might be taken on appeal for review, and it might well be that the appellate court might reverse the decree discharging the defendant from arrest, and the action was, therefore, premature. On application for rehearing the court was advised that, although the main action for debt against the plaintiff in the suit for damages was still pending, the suit, so far as his arrest was concerned, was terminated when the suit for damages was instituted, as the judgment of the District Court, setting aside the arrest, had been appealed to the Court of Appeals and been affirmed, and the issues on that branch of the case had become final. It therefore declared that the suit for damages was not premature.

The court's first decision was based upon the fact supposed by it to exist that the original suit for arrest had not yet been disposed of at all by the court in which it was instituted. The remark of the Chief Justice as to what that court might decide when it should render a judgment, and the possibility of that judgment being ultimately reversed on appeal to the Supreme Court, against the plaintiff in the damage suit, is not entitled to the weight which counsel attribute to it. In the case before us it is not only shown that, prior to the institution of the present suit, the District Court had rendered a judgment in the case of Wright, Blodgett & Co., Limited, vs. Charles S. Elms, dissolving their injunction, but that the delays for a suspensive appeal had expired; that when defendants appealed from that judgment it was through a devolutive appeal, and that on this appeal the judgment has been affirmed by the Supreme Court, prior to its rendering judgment upon the demand made by the plaintiff in the present action.

We do not understand that because a judgment may be, from its character, an appealable one, and a right of appeal be open to the party cast for one year, that the judgment is forced to remain without any effect during that whole year. The party cast has it in his power to suspend its effect and to prevent its execution by a suspensive appeal, but he is not authorized to allow the delays granted to him for that purpose to expire without availing himself of them and by. abstaining for a year from taking a devolutive appeal, successfully urge that the judgment pronounced against him could not be made available as the basis of any legal proceedings against him by reason of its not yet being a finality, nor yet fully protected from review by a plea of *"res judicata."* The Code expressly provides, notwithstanding the existence of a right of ultimate review through the exercise of the right of a devolutive appeal, that the judgment can and shall receive execution.

If it be true that a man's entire property can be swept away by execution of judgments, notwithstanding the right of devolutive appeal from the judgments, it can not be pretended that a party holding a judgment against him should be cut off from availing himself of the slow process of obtaining damages against the judgment debtor and making the judgment he had obtained a basis for the claim.

We are of the opinion that, although the judgment may not be technically *"res judicala,"* it none the less can be introduced in evidence as a judgment, though not as a final judgment, and made the basis of a

claim on a judgment for damages, subject to such rights as may arise from the reversal of the same on devolutive appeal. (Succession of Gaines, 45 Ann. 1247.)

It may be that the court might, in view of a right of devolutive appeal still existing, postpone the trial of a case, or postpone rendering a judgment in it, upon a proper showing. (Succession of Troxler, 46 Ann. 738.) But it could scarcely, we think, declare the filing of a suit within the year for appeal, premature action and dismiss it upon that ground.

We do not think the present suit was prematurely brought.

Defendants next urge that the injunction which they caused to be issued can not serve as the basis of a claim for damages, because the same effect which resulted from the taking out of an injunction would have followed from the mere fact of claiming the property as their own. They cite in support of this position Article 2453 of the Civil Code, which declares that "the thing claimed as the property of the claimant can not be alienated pending the action so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another's property, and does not prevent him from being put in possession by virtue of such judgment." They contend that "this being the law, in the nature of things it inevitably follows that the issuance of the injunction was mere surplusage and had no other effect than preventing Elms from disposing of the land so as to harass the plaintiff in the event that the contract of sale should be maintained." They claim that they had the right to institute an ordinary suit for the property fully protected from any claim for damages, and that a person is not bound to repair the damages which he may cause to another by the legitimate exercise of his legal rights. The defendants did not consider themselves protected from a sale of these lands by Elms, through the provisions of Article 2453 of the Code, for had they been of that opinion they would not have taken out the injunction they did. That article is based upon the theory of constructive notice or knowledge having been brought home to parties proposing to deal with the defendant in a petitory action that his title was contested. Whether the provisions of that article, under our present registry laws, would extend to a case where the rights claimed by the plaintiff in a petitory action were not based upon rights of his own, evidenced by registry, where registry would be necessary to convey notice to the general public, we need not now discuss. We may assume that if the defendants

in this case had, in point of effect, been able to establish, and had, in fact, established, the existence of a sale between themselves and Elms, and an intention on the part of the latter to dispose of the lands to another, by reason of there being no evidence of record of the existence of such sale, that Elms could not, and would not, have been entitled to damages, because of the injunction, but if we suppose that the acts of Elms, upon which defendants based their conclusions, that he had sold them these lands, were not of a character such as to create a contract of sale, and their conclusions on the subject were not well founded (as we have just decided they were not in their injunction suit), then the defendants would, through their injunction, have illegally interfered with Elms' right of disposing of his own property as he might think proper, and might have very seriously damaged him through this judicial action. It will not do to say that the situation was the same as if judicial interposition had not been invoked and obtained. But for the court's orders he, and those with whom he would be dealing, would be free to take their own course, subject to such risks as might arise from the actual situation, but with the hand of the law directly laid upon him, Elms was powerless to act, unless he should do so in disregard of judicial orders and subject to punishment. It is easy to see how an injunction could be made to serve as an instrument of coercion and wrong, and the means of inflicting damage upon others. In the case which we have assumed, the acts of the defendants in taking out the injunction would not have been, as they assert, "the legitimate exercise by them of a legal right." The legal right of the defendants to have caused to be issued in this case the injunction against Elms has passed beyond the point of investigation and enquiry. It is a closed issue.

We are now to consider what are to be the consequences of the wrongful issuing of the injunction. We confine ourselves to the damages which result from the injunction itself. We consider a number of the allegations of plaintiff's petition to have been simply made in aid of his claim for those damages and not as a basis for claims for other separate and distinct damages on substantive, distinct and separate causes of action. We are of the opinion that plaintiff's demand for exemplary damages is not well grounded. Though the plaintiffs in the original suit were mistaken in their rights, we think they believed, under legal advice, that they were prosecuting a valid claim in a legal way. Plaintiff's claim for damages for injury to reputation for

the issuing of the injunction, is not sustained. We think he was well thought of before the injunction was issued, and that he continued to be well thought of afterwards. Very few persons were aware of the character of the litigation between these parties. Every law suit gives occasion to more or less gossip or talk, without knowledge of its actual character. The plaintiff can not be held accountable for loose discussions by outside parties in regard to litigation, nor for erroneous deductions therefrom, not warranted by the facts.

The demand made by the defendants for an injunction did not involve an attack upon plaintiff's honesty or integrity. The parties may well have differed from each other in respect to their own respective rights and obligations, and each been determined to act on the strength of his own views on the subject without the character of either being impugned.

Plaintiff complains specially of a motion for a continuance filed during the litigation, which was sworn to by Kelly, and which plaintiff declares was libelous, and attacked his reputation without cause or justification. This application was made after the injunction had been granted, and conceding that the facts therein stated and complained of were unfounded and would give rise legally to a claim for damages, they would have to be sought in a different action from the present. These damages would result, not from the issuing of the injunction itself, but from matters occurring subsequent thereto. The motion for the continuance, it is true, was occasioned by the injunction and the defendants' answer therein, but these matters arose collaterally. Defendants' answer in that suit contained some very serious charges against the plaintiff in injunction, and defendant, also, asked damages against them in reconvention for injury to his reputation. He, thereby, to a certain extent, raised an issue upon that subject which plaintiffs were endeavoring to meet. We express no opinion in respect to the defendants' action in this matter, for we do not think the subject should be brought up and disposed of collaterally in this action for damages upon the bond for an injunction.

The plaintiff claims from the defendants for damages to his business resulting from the injunction. Here again we must confine ourselves to damages resulting directly from the injunction, not those incidentally, remotely, consequentially and collaterally connected with it. The plaintiff has, himself, shown that he was very successful in business after the injunction had been granted. How much more successful he

might have been had the injunction not been granted we do not know, nor can we say. We do not see in the record any damage resulting to the plaintiff from his temporary inability, by reason of the injunction, to carry out his contract with Underwood. That matter seems, as between those parties, to have been adjusted without loss. Plaintiff, however, contends that had this contract gone at once to execution, as it should and would have done, but for the injunction, he would, at once, have received the price of the lands and deposited them to his credit in the Calcasieu Bank, with which he was doing business; that had this deposit been made, his account at that bank would have been such that the bank would have advanced him money for the purposes of his business, and with those moneys he could have extended his business and made profitable investments, which, as matters took shape, he was unable to do.

Roberts, cashier of the Calcasieu Bank, being on the stand, as a witness for the plaintiff, was asked, on cross-examination, whether the injunction caused Mr. Elms' credit to be injured with his bank, and replied that it had not. Defendants' counsel then said: "Mr. Elms has testified that he could not increase his line of credit with the bank; was that due or not to the fact he had all he was entitled to, or did it have something to do with the injunction?" To this, witness answered: "It had nothing to do with the injunction."

Had Mr. Elms received the price, at once, of the lands held under options by Underwood, the sale of which was enjoined, it is not a matter of certainty what he would have done with it, nor what the actual result would have been of his use of it. In Hutchinson vs. Sparks, 3 Ann. 549, the court, referring to plaintiff's claim, said:

"The ground upon which this claim for damages was made was that if plaintiff had obtained the notes when he demanded them, after the report of the referee, he would have been able to raise money upon them, and could have employed it profitably. To sustain these allegations, witnesses were called to prove that at the time favorable opportunities were presented for speculations in corn, and that plaintiff would have been able, with a sum of one thousand dollars, which he could have raised upon the notes, to realize profits to the amount of one thousand dollars. Damages thus remote and conjectural are inadmissible." (See on the subject Gray vs. Lowe, 11 Ann. 392.)

There is nothing to show that defendants were informed prior to the issuing of the injunction as to the pecuniary situation of the plaintiff

at that time, nor of his relations with the Calcasieu Bank, nor of their mode of dealing with each other. The consequential results of the injunction of which plaintiff complains were not such as would naturally and directly result from an injunction preventing the sale of certain specified property. The failure of the Calcasieu Bank to advance plaintiff more money was undoubtedly due to the latter's already existing indebtedness to it, and whether that bank would have advanced to him and to what extent it would have advanced to him, had he then either partially or completely extinguished this indebtedness, are uncertain facts.

Plaintiff urges that the defendants, through their agents, bought up lands for which he held options, by circulating the report that he was impecunious and would not and could not avail himself of his right to purchase the lands. This action on defendants' part, conceding the facts to be as charged, and conceding defendants' action to have been wrongful and injurious to plaintiff, was not the result of the injunction. Defendants were in position to accomplish the same results independently of any question of injunction; for there was no legal obstacle in their way preventing. If plaintiff had any right of action flowing from defendants' acts in this regard it would have to be advanced as a matter of complaint independently of the injunction.

Defendants deny that they are responsible to the plaintiff for his counsel fee in the matter of the injunction suit; they claim that the injunction was dissolved, but as the result of the judgment upon their main demand to be declared owners of the property, and to force a specific performance by plaintiff to pass a deed of sale for the property. The value of the services of an attorney for dissolving an injunction may be other than their value for dissolving the injunction and also defeating a main demand connected therewith. In such cases the value of the services may often be properly separately considered. The dissolution of an injunction for an error of pleading of form or something of that character, may, for instance, involve the work of only a few minutes, while the main demand may be dependent upon numerous and complicated facts; and the examination of very difficult questions of law, requiring weeks of study and preparation and labor. Under such circumstances, it would be manifestly unjust to throw upon the plaintiff the counsel fees for the entire case, under guise that the suit was an injunction suit. Cases of that character, as to attorney's fees, would stand upon their special features.

We do not consider the present case as one falling within that class. We do not think that parties causing an injunction to issue by which a citizen is for months kept out of the control of his property on grounds involving for the ascertainment of the legality of the taking out of the injunction a great number of facts and difficult questions of law, which, on investigation, disclose the fact that there was no legal ground for the injunction, can shelter themselves from holding the defendant in injunction harmless from the expense incurred by him in establishing that fact, upon the ground that there was connected with the prayer for an injunction a prayer for a judgment, such as would have been asked in an ordinary suit, without an injunction, and that the dissolution of the injunction and the rejection of the prayer for judgment should have been disposed of at one and the same time. In this case had the matter of the injunction been taken up and disposed of separately from that portion of plaintiffs' demand asking for a judgment and the injunction had been dissolved as having been illegally taken out on a state of facts not existing, as had been alleged, the main demand would have practically fallen by the effect of that decision; there would be little left to be done on what defendants style "the main demand."

Plaintiff in this case prayed, in his answer, for a dissolution of the injunction, and before judgment discontinued his reconventional demand. He had made an unsuccessful attempt to obtain a bondsman to bond the injunction. The judgment first dissolved the injunction and then dismissed the suit.

As was said by Chief Justice Bermudez, in Wentz vs. Bernhardt, 37 Ann. 636: "While the judgment appears to be one upon the merits, it is practically one upon the exception." The evidence shows that plaintiff engaged the services of an attorney for a stipulated fee of five hundred dollars. We have examined the proceedings with reference to the reasonableness of that fee and we think the services were well worth that sum. The District Court does not specifically allow this claim, but we think that five hundred dollars out of the amount of the judgment was evidently decreed to the plaintiff to cover that fee. We think that the balance of the judgment was for expenses and other matters directly incidental to the dissolution of the injunction. We think the judgment of the lower court to be correct, and it is hereby affirmed.

PROVOSTY, J., takes no part.

City of New Orleans vs. Life Insurance Co.

ON APPLICATION FOR REHEARING.

BLANCHARD, J.  Complaint is made by defendant company that the decree of this court, affirming the judgment appealed from by plaintiff, does not specifically state by whom the costs of appeal should be paid. It is not necessary it should so state.  Plaintiff, having appealed the case and lodged the transcript here, and being cast on the appeal in the sense that no change in the judgment to his advantage was made—the judgment being simply affirmed—the law itself carries the costs against him (C. P. 157, 549, 551, 523); they are incidental to the judgment (St. Romain vs. Robeson, 12 R. 194).

An appellant is to pay the costs of appeal where the judgment is affirmed.  C. P. 907.

Rehearing denied.